**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DOUGLAS PHILLIP BRUST, D.C., P.C., et al., | ) ) ) |
| Plaintiff, | ) ) Case No. 4:21-cv-00089-SEP |
| v. | ) ) |
| OPENSIDED MRI OF ST. LOUIS LLC, et al., | ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Before the Court are Plaintiffs' Motion to Certify Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), Doc. [48], and Unopposed Motion to File Under Seal, Doc. [50]. For the reasons set forth below, both motions are granted.

**FACTS AND BACKGROUND**

The Telephone Consumer Protection Act of 1991 (TCPA) makes it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless certain conditions are met. 47 U.S.C. § 227(b)(1)(C). The statute defines "telephone facsimile machine" to mean "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." *Id.* § 227(a)(3).

This case involves unsolicited fax advertisements received by Plaintiffs Douglas Phillip Brust, D.C., P.C., and Alan Presswood, D.C., P.C., who bring suit individually and on behalf of others similarly situated. They initiated this junk fax case against Opensided MRI of St. Louis, LLC, Opensided MRI of St. Louis II, LLC, and Matthew Ruyle, alleging violations of the TCPA. Plaintiffs are professional corporations. Defendant Opensided is an imaging center that performs MRIs, CTs, and X-rays for patients. Opensided is owned by Quality Imaging, LLC, and does business as Greater Missouri Imaging. Matthew Ruyle is a part owner of Quality Imaging.

Between April and June of 2020, during the early months of the COVID-19 pandemic and at the height of the related shutdowns, Opensided sent faxes to certain members of the St.

Louis medical community alerting them that it was open and its imaging services were available while other radiologic providers were closed.  Plaintiffs allege that on April 7, 2020, April 15, 2020, April 21, 2020, May 18, 2020, and June 1, 2020, Opensided caused 7,522 such unsolicited fax advertisements to be sent to approximately 1,583 fax numbers, including numbers belonging to Plaintiffs.  Brust alleges that he received the faxes on a traditional standalone facsimile machine, while Presswood received the faxes via an online fax service.

> Plaintiffs seek an order from the Court certifying the following class:
>
> Class A—All persons or entities who were successfully sent faxes, on or about April 7, 2020, April 15, 2020, April 21, 2020, May 18, 2020, and June 1, 2020, that state: "Greater Missouri Imaging, We are scheduling Monday-Friday for emergent and non-emergent MRIs, CTs and injections," and/or "At Greater Missouri Imaging we are always striving to provide the best diagnostic imaging services in the St. Louis are [sic]."

Doc. [48] at 2.  Alternatively, if the Court sees fit to distinguish between faxes successfully sent to standalone fax machines versus faxes that were successfully sent to an online fax service, Plaintiff requests that the Court certify the following class:

> Class B—All persons or entities who were sent successfully faxes to their stand-alone telephone facsimile machines, on or about April 7, 2020, April 15, 2020, April 21, 2020, May 18, 2020, and June 1, 2020, that state:  "Greater Missouri Imaging, We are scheduling Monday-Friday for emergent and non-emergent MRIs, CTs and injections," and/or "At Greater Missouri Imaging we are always striving to provide the best diagnostic imaging services in the St. Louis area."

*Id*.  Plaintiffs also seek an Order from the Court appointing Plaintiffs as class representatives and appointing the law firms of Margulis Law Group and Anderson + Wanca as class counsel.  *Id*.

Defendants argue that online fax users—included in Class A—do not have claims under the TCPA pursuant to the recent *Amerifactors* decision issued by the Consumer and Governmental Affairs Bureau, and that they lack Article III standing.  *See* Doc. [54] at 10, 22; *In re Amerifactors Fin. Grp., LLC Pet. for Expedited Declaratory Ruling, Rules and Reguls. Implementing the Tel. Consumer Prot. Act of 1991, Junk Fax Prot. Act of 2005*, 34 FCC Rcd. 11950, 11953 (2019).  Defendants also argue that the proposed classes fail under Rule 23(a) and Rule 23(b)(3) and certification is not justified because Plaintiffs have not demonstrated typicality and adequacy under Rule 23(a) or that common issues predominate and a class action would be superior under Rule 23(b).

## GOVERNING LAW

A.      The TCPA

Congress passed the TCPA in 1991 to balance "[i]individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991). It was later amended by the Junk Fax Prevention Act of 2005 § 2, 47 U.S.C. § 227. In relevant part, the TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" unless:

(i)     The unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii)    The sender obtained the number of the telephone facsimile machine through–

(I)     The voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II)    A directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,

except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before the date of enactment of the Junk Fax Prevention Act of 2005 [enacted July 9, 2005] if the sender possessed the facsimile machine number of the recipient before such date of enactment; and

(iii)   The unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D) . . . .

47 U.S.C. § 227(b)(1)(C).

The TCPA defines the term "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). "Express permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements[.]" *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14129 (2003). A person or entity may bring an action to enjoin a violation of the TCPA or to recover actual damages or statutory damages of $500 for each violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B).

3

### B.     Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with [Federal Rule of Civil Procedure] 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation and citations omitted). The Court must also be satisfied that the proposed class is "adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (internal quotation omitted).

The Rule 23 inquiry has two parts. First, Rule 23(a) establishes four prerequisites for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Second, a plaintiff seeking to maintain a class action must also satisfy at least one provision of Rule 23(b). *Comcast*, 569 U.S. at 33. Here, Plaintiff relies on Rule 23(b)(3), which requires that questions of law or fact common among class members must predominate over questions affecting only individual members, and a class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. The burden is on the plaintiff to show by a preponderance that the requirements of Rule 23 are met. *See Coleman v. Watt*, 40 F.3d 25, 258 (8th Cir. 1994).

Certification of a class is proper only if, after "rigorous analysis," the Court is satisfied that the Rule 23 requirements are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (internal quotation marks and citation omitted). Although that "rigorous analysis" may frequently entail some overlap with the merits of the underlying claims, *see id.* at 351, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) (citing *Dukes*, 564 U.S. at 351 n.6). "[The Court's] primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1037 (8th Cir. 2018); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982) (a court's analysis of whether to certify a class may sometimes require the

court to "probe behind the pleadings," but other times "the issues are plain enough from the pleadings").

Finally, while "class certification is normal in litigation under the TCPA, there are no invariable rules regarding the suitability of a particular case under . . . the TCPA for class treatment. The unique facts of each case generally will determine whether certification is proper." *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 544 (D. Minn. 2017) (internal quotations and citations removed).

## DISCUSSION

### A. Online Fax Services

The Federal Communications Commission (FCC) has the authority to issue regulations implementing the TCPA. 47 U.S.C. § 227(b)(2). The FCC's Consumer and Governmental Affairs Bureau recently held that the TCPA applies only to traditional fax machines that print on paper, and not faxes that are received by a computer.[1] *In re Amerifactors Fin. Grp.*, 34 FCC Rcd. at 11950-51. Defendants assert that *Amerifactors* is entitled to *Chevron*[2] deference and is binding on this Court, or alternatively, that it is entitled to *Skidmore*[3] deference. Defendants argue that, pursuant to *Amerifactors*, the TCPA is not applicable to online fax users and therefore "parties who received faxes through online fax services have no claim under the TCPA and do not have standing to participate in this litigation." Doc. [54] at 7. Defendants further argue that "Class A must fail because it includes an unknown number of recipients who received the faxes via online fax services." *Id*. Defendants further argue that this is fatal to Class B as well, because "individualized inquiries concerning each putative class members' method of receipt— be it standalone facsimile machine or online fax service—still predominate over any other alleged common issue." *Id*. at 8. Thus, Defendants argue, Plaintiffs "cannot satisfy the predominance requirement of Rule 23(b)(3) and certification of Class B is also improper." *Id*.

---

[1] The CGAB, in reliance on *Amerifactors*, later reaffirmed the *Amerifactors* ruling in a decision issued in *In the Matter of Joseph T. Ryerson & Son, Inc. Pet. For Declaratory Ruling Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 35 FCC Rcd. 9474 (2020).

[2] *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984) (where Congress has "left a gap in a statute to be filled by a particular agency," courts should defer to agency interpretation of the statute).

[3] *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (under the *Skidmore* standard of review, agency views that are within its area of expertise are entitled to a level of deference commensurate with their inherent power to persuade, but no more).

Plaintiffs maintain that online faxes are covered by the unambiguous text of the TCPA. Doc. [49] at 30-31. They also assert that *Amerifactors* is not a final binding order of the FCC under the Hobbs Act, 28 U.S.C. § 2342(1) and thus is not controlling on this Court. *Id*. As further discussed below, the Court agrees with Plaintiffs.

The question whether the TCPA applies to online fax services has divided federal district courts. *Compare Urgent One Med. Care, PC v. Co-Options, Inc.*, 2022 WL 16755154, at *6 (E.D.N.Y. June 1, 2022) (TCPA covers online faxes); *Ambassador Animal Hosp., Ltd. v. Hill's Pet Nutrition, Inc*., 2021 WL 3043422, at *1 (N.D. Ill. Feb. 17, 2021) (TCPA covers faxes sent to computers in addition to traditional fax machines); *with Licari Family Chiropractic, Inc. v. Eclinical Works, LLC*, 2021 WL 4506405, at *5 (M.D. Fla. Jan. 11, 2021) (The TCPA does not apply to online fax services because "*AmeriFactors*. . . . [is] entitled to *Chevron* deference[.]"); *Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, 2020 WL 4937790, at *3 (W.D. Tenn. Aug. 24, 2020) (same).

The Eighth Circuit has not addressed whether the TCPA applies only to traditional standalone fax machines, or also encompasses faxes received via online fax services. The Sixth Circuit has spoken on this precise issue, however. In *Lyngaas, D.D.S. v. Curaden AG*, 992 F.3d 412 (6th Cir. 2021), the defendants in a similar TCPA junk fax class action argued that "a TCPA claim is not actionable if the unsolicited advertisement is received by any device (such as a computer through an 'efax') other than a traditional fax machine." *Id*. at 425. The Sixth Circuit rejected that argument. *Id*. The court first noted that the TCPA makes it "unlawful for any person within the United States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." *Id*. at 423-24 (citing 47 U.S.C. § 227(b)(1)(C)). The Sixth Circuit determined that it was "unpersuaded by the defendants' attempt to limit a 'telephone facsimile machine' to only traditional fax machines . . . because such a narrow definition does not comport with the plain language of the TCPA." *Lyngaas, D.D.S.*, 992 F.3d at 425-26. The Sixth Circuit went on:

> The TCPA defines a "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3). This definition makes clear that a "telephone facsimile machine" encompasses more than traditional fax machines that automatically print a fax received over a telephone line. In particular, it

6

> includes "*equipment*" that has the "*capacity*" . . . to transcribe text or images," *id.* (emphasis added), from or onto paper—as long as the electronic signal is transmitted or received over a telephone line. The statutory text alone, therefore, rebuts the defendants' argument.

*Id*. at 426 (emphasis in original). The court went on to conclude:

> [T]he defendants' argument is overbroad. They ask us to hold that a fax received by any device (such as a computer) that is not a traditional fax machine falls outside the scope of the TCPA. The statutory definition, however, encompasses more than a traditional fax machine. Notably, it does not require the actual printing of the advertisement, which dispels the defendants' argument that Congress was concerned only with the burdensome ink-and-paper costs of fax advertising.

*Id*. at 427. The Court finds the Sixth Circuit's analysis persuasive, and likewise concludes that the plain language of the statute rebuts Defendants' argument that the TCPA applies only to traditional fax machines.

Where, as here, the Court's "construction [of the statute] follows from the unambiguous terms of the statute," the Court does not defer to the agency's interpretation.[4] *Brand X Internet Servs*., 545 U.S. 967, 982 (2005) (citing *Chevron*, 467 U.S. at 842-43); *see also Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc*., 788 F.3d 218, 223 (6th Cir. 2015) (if the TCPA "unambiguously defines" a term, the courts do not consider the FCC's interpretation). And in any event, reliance on the currently controlling FCC interpretation on this question would only bolster the Court's conclusion. The Court agrees with those courts that have determined that *Amerifactors* is not a controlling final decision of the FCC, as it was "issued by the Consumer & Governmental Affairs Bureau and does not appear to constitute a 'final order' of the FCC under the Hobbs Act," because an application for review[5] with the FCC is pending. *Levine Hat Co. v.*

---

[4] The Court notes that there is some uncertainty as to whether federal district courts are bound by FCC orders. *See PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2058 (June 20, 2019) (Kavanaugh, J., concurring in the judgment) ("[T]he Hobbs Act does not bar [a litigant] from arguing that the FCC's legal interpretation of the TCPA is incorrect. The District Court is not bound by the FCC's interpretation. In an as-applied enforcement action, the district court should interpret the statute as courts traditionally do under the usual principles of statutory interpretation, affording appropriate respect to the agency's interpretation."). The Court need not wade into those waters, as the plain language of the statute controls here.

[5] *See Applicant Career Counseling Services, Inc.'s Application for Review*, CG Docket Nos. 02-278, 05-338 (Jan. 8, 2020). *Amerifactors* was issued by the Consumer and Governmental Affairs Bureau, not the full Commission, and an application for review by the full FCC was filed. 47 U.S.C. § 155(c)(3) provides that a ruling by a subordinate unit of the FCC "shall have the same force and effect . . . as orders, decisions, reports, or other actions of the Commission," unless "reviewed as provided in paragraph (4) of

7

*Innate Intelligence, LLC*, 538 F. Supp. 3d 915, 926 (E.D. Mo. 2021); *see also Mussat v. IQVIA Inc.*, 2020 WL 5994468, at *3 (N.D. Ill. Oct. 9, 2020) (*Amerifactors* is not binding because it was issued by "a subordinate unit of the FCC" and an application for review by the FCC is pending.). Meanwhile, the most recent final rule issued by the FCC determined that online fax services were covered by the TCPA. *See Lyngaas*, 992 F.3d at 426 ("In 2003, after a period of notice-and-comment, the FCC issued an order explaining that 'developing technologies permit one to send and receive facsimile messages in a myriad of ways,' and concluding that 'faxes sent to personal computers equipped with, or attached to, modems and computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes.'" (quoting *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14133 (2003))). The 2003 FCC final rule reinforces the Court's reading of the statute.

### B. Article III Standing

"A district court may not certify a class . . . if it contains members who lack standing." *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (citation and internal quotation marks omitted). Defendants argue that online fax service recipients lack standing under the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). *See* Doc. [54] at 22-23. *Spokeo* held that a "bare procedural violation" of a statutory right— "divorced from any concrete harm"—is not sufficient to establish Article III standing. *Spokeo*, 136 S. Ct. at 339. Here, Plaintiffs allege that Defendants' violation of the TCPA caused several types of concrete harm. Specifically, Plaintiffs allege that Opensided, by sending five unsolicited faxes, disrupted Presswood's business by wasting the time of its employees and by violating its rights to privacy and interest in seclusion. Doc. [49] at 27; Doc. [1-1] ¶¶ 3, 57, 67. Plaintiffs also allege that the unsolicited faxes caused the "very harm to be remedied by the TCPA, [which] was the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements." Doc. [49] at 27 (citing *Golan v. FreeEats.com., Inc.*, 930 F.3d 950, 959 (8th Cir. 2019)).

---

this subsection." Section 155(c)(4) governs applications "for review by the Commission." Accordingly, "[a]n order from a subordinate unit of the FCC . . . becomes final if no application for review before the full Commission is filed." *Georgia Power Co. v. Teleport Commc'ns Atlanta, Inc.*, 346 F.3d 1047, 1050 (11th Cir. 2003). But once an application for review is filed, "the subordinate unit's order is non-final." *Id.* And so *Amerifactors* is not a final order of the FCC.

The "vast majority" of post-*Spokeo* TCPA cases "have concluded that the invasion of privacy, annoyance, and wasted time associated with robocalls is sufficient to demonstrate concrete injury." *Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, 2017 WL 733123, at *6 (N.D. Cal. Feb. 24, 2017) (collecting cases). Indeed, most courts find that the receipt of even one unwanted call or text "is [generally] enough to clear Article III's low bar for a concrete injury." *Ung*, 198 F. Supp. 3d at 1039; *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462-63 (7th Cir. 2020) (receipt of five unsolicited text messages were a concrete injury in fact under Article III because unwanted text messages "pose the *kind* of harm that common law courts recognize[,]" and thus constituted "a concrete harm that Congress has chosen to make legally cognizable"); *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (receipt of unsolicited spam text messages was "the very injury" the TCPA is designed to prevent and bears a close relationship to harms traditionally redressed at common law); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) ("nuisance and invasion of privacy" arising out of a single prerecorded telephone call are "the very harm that Congress sought to prevent"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (a plaintiff need not allege any additional harm beyond an invasion of privacy or disruption of solitude to establish standing under the TCPA); *Caudill v. Wells Fargo Home Mtg., Inc.*, 2016 WL 3820195, at *2 (E.D. Ky. July 11, 2016) (calls caused harms "such as the invasion of privacy [that] have traditionally been regarded as providing a basis for a lawsuit in the United States"); *Rogers v. Capital One Bank (USA), N.A.,* 190 F. Supp. 3d 1144, 1147, 2016 WL 3162592, at *2 (N.D. Ga. June 7, 2016) (rejecting argument that plaintiffs lacked standing under TCPA where they alleged "the Defendant made unwanted phone calls to their cell numbers"); *Cour v. Life360, Inc.*, 2016 WL 4039279, at *2 (N. D. Cal. July 28, 2016) (receipt of single unauthorized text message sufficient to create standing under TCPA). Similarly, unwanted faxes have been found to harm a plaintiff by "occup[ying] his fax line and machine, us[ing] his toner and paper, [or] wast[ing] his time." *Brodsky v. HumanaDental Ins.*, 2016 WL 5476233, at *11 (N.D. Ill. Sept. 29, 2016); *see also Fauley v. Drug Depot, Inc.*, 204 F. Supp. 3d 1008, 1011 (N.D. Ill. 2016) (same).

The Eighth Circuit has yet to specifically address whether the harm caused to online fax service recipients by the receipt of five unsolicited faxes may be sufficient to confer standing to sue. However, the Eighth Circuit has answered the similar question of whether a plaintiff has Article III standing to pursue a TCPA claim based upon the receipt of two unsolicited phone

9

calls.  *See Golan*, 930 F.3d at 958.  The Eighth Circuit recognized that the "harm to be remedied by the TCPA was 'the unwanted intrusion and nuisance of unsolicited telemarketing phone calls and fax advertisements.'"  *Id.* at 959 (quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)).  In *Golan*, the Eighth Circuit, reviewing the injury-in-fact requirement in light of the Supreme Court's holding in *Spokeo*, held that the plaintiffs had established a sufficient concrete injury in fact to pursue a TCPA claim when they allegedly received two unsolicited and pre-recorded voicemails on their answering machines.  *Golan*, 930 F.3d at 957-59.  The Eighth Circuit noted that it "does [not] matter that the harm suffered here was minimal; in the standing analysis we consider the nature or type of the harm, not its extent."  *Id*. at 959.  The two unsolicited phone calls were sufficient to confer Article III standing because the harms associated with receiving the telemarketing messages "b[ore] a close relationship to the types of harms traditionally remedied by tort law, particularly the law of nuisance."  *Id.*

Here, putative class members similarly received multiple faxes that they allegedly did not previously consent to.  The Court finds this bears a close resemblance to the receipt of the two short answering machine messages in *Golan.*  The Court recognizes that *Golan* was addressing unwanted voicemails, not faxes, but the fact that the messages were received on a home answering machine does not appear to have factored into the Eighth Circuit's analysis.  Rather, the Eighth Circuit focused on unwanted intrusion and nuisance, both of which are similarly caused by unwanted faxes.  *Id*. at 955.  The Court has no reason to believe the Eighth Circuit will reach a different conclusion when the harm is based on unwanted fax advertisements instead of unwanted voicemail messages.  Therefore, the Court finds that the receipt of unwanted faxes via online fax services is sufficient to confer Article III standing to bring a claim under the TCPA.  The Court turns now to consideration of the Rule 23 requirements for class certification.

## C. Rule 23(a)

### 1. Numerosity

The first requirement for class certification under Rule 23(a)(1) is that "the class is so numerous that joinder of all members is impractical."  Fed. R. Civ. P. 23(a)(1).  In assessing whether the numerosity requirement has been met, courts examine factors such as the number of persons in the proposed class, the nature of the action, the size of the individual claims, and the inconvenience of trying individual claims.  *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982).  Numerosity is undeniably present, as there are 1,583 putative class members in Class

10

A and 1,422 in Class B, and joining all putative members of the proposed classes would clearly be impracticable.  *See In re Wholesale Grocery Prod. Antitrust Litig.*, 2016 WL 4697338, at *7 (D. Minn. Sept. 7, 2016) ("The Eighth Circuit has affirmed the certification of classes with as few as 20 members.").  Defendants do not argue otherwise.

        2. <u>Commonality</u>

The second requirement for class certification under Rule 23(a) is that "questions of law or fact" be "common to the class."  Fed. R. Civ. P. 23(a)(2).  Plaintiffs must show that their class claims "depend upon a common contention" that "is capable of class wide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  Commonality "does not require that every question of law or fact be common to every member of the class . . . and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."  *Downing v. Goldman Phipps PLLC*, 2015 WL 4255342, at *4 (E.D. Mo. July 14, 2015) (quoting *Paxton*, 688 F.2d at 561); *see also Ebert v. General Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016) ("[A] single common question 'will do' for purposes of Rule 23(a)(2).") (citing *Dukes*, 564 U.S. at 359).  Commonality is easily satisfied in most cases.  *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 674 (S.D. Iowa 2009) ("The burden imposed by [the commonality] requirement is light and easily met in most cases.") (citing *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 603 (D. Minn. 1999); then citing Newberg on Class Actions § 3:10 (4th ed. 2002)).

Commonality is satisfied here because Plaintiffs' claims present common questions of law and fact, including:  (1) whether Opensided used a telephone facsimile machine, computer, or other device to send the Faxes to "telephone facsimile machines," fax servers, or any other equipment; (2) whether the Faxes are "advertisements" as defined by 47 U.S.C. § 227(a)(5); (3) whether Opensided is the "sender" of the Faxes as defined by 47 C.F.R. § 64.1200(f)(11); (4) whether Opensided can meet its burden to demonstrate it had prior express invitation or permission to send the Faxes; (5) whether the opt-out notice on the Faxes complies with the TCPA and its implementing regulations, and (6) whether the TCPA regulates unsolicited fax ads sent to online fax services.  *See* Doc. [48] at 2-3.

        3. <u>Typicality</u>

The third requirement for class certification under Rule 23(a) is that "the claims . . . of the representative parties" be "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "This requirement is generally considered to be satisfied 'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'" *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561-62 (8th Cir. 1982) (quoting 7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1764 (4th ed. 2008)). The requirement "is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995).

Defendants argue that typicality is not satisfied here because "[n]either Brust nor Presswood suffered the same injury as the putative class members." Doc. [54] at 30. Defendants argue that Brust's claims are not typical of putative members of Class A "because it received the faxes on a standalone facsimile machine, unlike numerous other class members who received the faxes via online services and who were not injured at all." *Id*. The Court has already determined that the TCPA covers online fax services as well as standalone fax machines. Thus, Brust's and Presswood's claims and injuries are identical to, and thus typical of, those of the putative members of Class A. They all allegedly received unsolicited fax advertisements that wasted their time and invaded their rights to privacy and seclusion. That satisfies the typicality requirement.

    4. <u>Adequacy</u>

The adequacy of representation factor requires that the class representative must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In making this determination, the Court must consider "(1) whether the representatives and their attorneys are able and willing to prosecute the action completely and vigorously, and (2) whether each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Moore v. The Boeing Co*., 2004 WL 3202777, at *13 (E.D. Mo. Mar. 31, 2004). The Court finds that these requirements are met and that the named Plaintiff can adequately represent the class. Further, Plaintiffs' counsel is qualified to serve as class counsel under Rule 23(g).

    D.  **Rule 23(b)(3)**

Rule 23(b)(3) allows for certification of a class when "the questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance), and a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority).  Fed. R. Civ. P. 23(b)(3).  "The predominance requirement is 'demanding' . . . [and] a court considering certification pursuant to Rule 23(b)(3) must take a 'close look at whether common questions predominate over individual ones.'"  *Hudock v. LG Elecs. U.S.A., Inc*., 12 F.4th 773, 776 (8th Cir. 2021) (quoting *Comcast Corp.*, 569 U.S. at 34).  Though it is similar to the commonality inquiry of Rule 23(a), the predominance inquiry under 23(b)(3) is "more demanding" than the commonality inquiry.  *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016) (citation omitted). "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)).  "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 984-85 (8th Cir. 2021) (citation omitted).  "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, and goes to the efficiency of a class action as an alternative to individual suits." *Id.* (quoting *Ebert*, 823 F.3d at 479)

Plaintiffs argue that common issues predominate in this case, as they do in most TCPA fax cases, because the common facts "relate to Defendants' common course of conduct and the transmissions of the faxes," and the claims "are brought under the same federal statute and based on the same legal theories."  Doc. [49] at 19.  Plaintiffs assert that here, "common legal issues predominate because whether the faxes are 'advertisements,' whether Opensided is the 'sender' of the faxes, and whether the opt out notice on the faxes complies with statutory and regulatory requirements, are common to [all putative members], as is the issue of permission, an affirmative defense that a TCPA fax defendant has the burden of proving." *Id*. at 20.

Defendants argue that Plaintiffs fail to show predominance.  First, they assert that putative members of Class A who received faxes via online fax services lack standing, and so,

13

individualized inquiries into which members used online fax services would dominate the proceedings.  *See* Doc. [54] at 22-23.  Because the Court has already determined that the TCPA applies to online fax services and putative class members using such services have Article III standing, the Court need not consider that argument.

Defendants also assert that the subpoena process used by Plaintiffs to identify which recipients received the faxes on a standalone fax machine did not result in "conclusive evidence" that the recipients actually received the faxes on traditional fax machines.  *Id*. at 27.  Defendants argue that this uncertainty would require individualized inquiries as to each recipient's fax receipt method, defeating predominance of common issues as to Class B.  *Id*.  Plaintiffs respond, accurately, that they need not provide "conclusive evidence" of how recipients received the faxes, as their burden at this stage of the proceedings is only a preponderance of the evidence.  *See Atkins v. United States*, 2016 WL 3878466, at *2 (E.D. Mo. July 18, 2016) ("The party seeking class certification bears the burden of proving by a preponderance of the evidence that the requirements of Rule 23 are met.").  They submit that they have met that burden, and Defendants have failed to rebut their evidence.  As the Court has determined that it is not necessary to distinguish between faxes successfully sent to standalone fax machines and faxes successfully sent to an online fax service, the Court is certifying only Class A and not Class B, and thus it need not address that argument either.

The Court finds that Plaintiff has met its burden of showing, by a preponderance of the evidence, the predominance of common issues as to Class A.  "[C]ommon, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues," and thus the predominance factor is satisfied.  *Tyson Foods, Inc.*, 577 U.S. at 453 (2016).

Plaintiffs must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  A class action is a superior method when it "would promote judicial efficiency and uniformity of decisions as to persons [or entities] similarly situated."  *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 270 (D.D.C. 2002).  Plaintiffs argue that TCPA cases are an "archetypical example" of a case in which the class action mechanism is superior to individual litigation, as each plaintiff in a TCPA case stands to recover little in the way of damages, so they have little incentive to sue individually.  Doc. [49] at 22-23.

14

The factors to consider in determining superiority include:  (1) class members' interests in pursuing individual actions; (2) any existing individual litigation; (3) judicial efficiency; and (4) the "likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)-(D).  Here, individual members have little incentive to sue, as their damages would be limited to $500 to $1,500; there is no known existing individual litigation; adjudication of all 7,522 potential individual claims would be inconvenient and costly in terms of judicial resources; and, any concerns about manageability are outweighed by the superior nature of a class action in the circumstances of this case.  Consideration of the applicable factors yields the conclusion that a class action is the superior method for adjudicating the claims.  The many recipients of the allegedly unlawful faxes may, through the class action device, achieve economies of time, effort, and expense and promote uniformity of decision as to persons similarly situated.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997)

Finally, the Court must be satisfied that the proposed class is "adequately defined and clearly ascertainable."[6]  *Medtox Sci., Inc.*, 821 F.3d at 996 (internal quotation omitted).  Here, Plaintiff has fax logs showing the numbers that received each fax.  The Eighth Circuit has held that such fax logs are objective criteria that render recipients ascertainable.  *See id.* at 997 ("[F]ax logs showing the numbers that received each fax are objective criteria that make the recipient clearly ascertainable."); *see also Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 471 (6th Cir. 2017) ("In the context of the TCPA, where fax logs have existed listing each successful recipient by fax number, our circuit has concluded that such a record in fact demonstrates that the fax numbers are objective data satisfying the ascertainability requirement." (internal quotation omitted)).  Because Plaintiff has identified a reliable method to identify class members, the Court finds that the class is ascertainable.

### E. Motion to Seal

Also before the Court is Plaintiffs' Unopposed Motion for Leave to File Under Seal, in which Plaintiffs seek leave to file under seal certain exhibits to their motion for class certification.  Doc. [50].  The exhibits Plaintiffs wish to file under seal are the fax logs for the fax

---

[6] The Eighth Circuit has not addressed whether ascertainability is a "separate, preliminary requirement" of class certification, but it has confirmed that ascertainability is at least an implicit requirement that must be enforced as part of the "rigorous analysis" of Rule 23's requirements.  *Medtox Sci., Inc.*, 821 F.3d at 996; *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017).

broadcasts at issue in this case, obtained by subpoena earlier in this litigation, which contain the fax numbers of putative class members.  Plaintiffs seek to keep those fax logs under seal until 90 days following the final determination of this action.

"Generally speaking, there is a common-law right of access to judicial records, but that right is not absolute." *Flynt v. Lombardi*, 885 F.3d 508, 511 (8th Cir. 2018) (first citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978); then citing *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013)).  "This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, and 'to keep a watchful eye on the workings of public agencies.'" *IDT Corp.*, 709 F.3d at 1222 (quoting *Nixon*, 435 U.S. at 598) (internal citation omitted).  "The decision whether to seal a judicial record is left to the sound discretion of the trial court 'in light of the relevant facts and circumstances of the particular case." *Wishah v. City of Country Club Hills*, 2021 WL 3860328, at *2 (E.D. Mo. Aug. 30, 2021) (quoting *Nixon*, 435 U.S. at 599).  "Where the common-law right of access is implicated, the court must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the salutary interests served by maintaining confidentiality of the information sought to be sealed." *IDT Corp.*, 709 F.3d at 1223.  "The presumption of public access to judicial records may be overcome if the party seeking to keep the records under seal provides *compelling* reasons for doing so." *Flynt*, 885 F.3d at 511 (citing *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006)) (emphasis added).

Plaintiff's sealing motion is supported by a sealed memorandum of law, Doc. [51], that sets forth the reasons why Plaintiffs' exhibits should be filed under seal.  Plaintiffs argue that the exhibits contain confidential and competitively sensitive information, including the fax numbers of physicians and entities that were purchased from a fax wholesaler, and it would harm its business interests if the numbers were made public.  Plaintiffs also argue that the public's interest would not be undermined by sealing, and indeed, that there is no legitimate public interest at all in seeing the raw data in the fax logs.  Plaintiffs also argue that the exhibits cannot be redacted, as they contain virtually nothing but fax numbers.

On review of the exhibits at issue, the Court agrees that there is little-to-no public interest in the data contained therein, i.e., lists of numbers with no other meaningful information.  The Court agrees with Plaintiffs that their legitimate interest in preventing competitors from seeing

16

and potentially using those numbers outweighs any interest the public may have in the contents of the exhibits. Therefore, the motion to file under seal is granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Certify Class, Doc. [48], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' proposed Class A is certified.

**IT IS FURTHER ORDERED** that Plaintiffs' Unopposed Motion for Leave to File Under Seal, Doc. [50], is **GRANTED**.

Dated this 31st day of March, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE